[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 8, 2011
JOHN LEY
CLERK

_____

No. 10-12176

_____

D. C. Docket No. 4:10-cv-0007-HLM

LAMAR GRIZZLE,
KELVIN SIMMONS,

Plaintiffs-Appellees,

versus

HONORABLE BRIAN KEMP,
in his official capacity as Secretary of State of Georgia
and Chairperson of the Georgia State Election Board,

Defendant-Appellant,

THE STATE ELECTION BOARD OF THE STATE OF GEORGIA, et al.

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 8, 2011)

Before TJOFLAT, ANDERSON and ALARCÓN,[*] Circuit Judges.

ALARCÓN, Circuit Judge:

In this appeal, we must determine whether the District Court erred in applying the strict scrutiny standard in reviewing the Plaintiffs' claims under the First and Fourteenth Amendments in issuing a preliminarily injunction against the Honorable Brian Kemp, the Secretary of State of Georgia (the "Secretary of State"), in his official capacity, and the County Executive Committee of the Bartow County Republican Party (the "Republican Party"), enjoining the enforcement or application of the portion of Georgia Code Ann. § 20-2-51(c)(2) (2009) that precludes relatives of certain employees of a school system from serving as members of that district's board of education. We must also decide whether the District Court erred in holding that a case or controversy exists with regard to the Secretary of State.

We reverse the order granting a preliminary injunction because we conclude that the District Court erred in reviewing the Plaintiffs' First and Fourteenth Amendment claims under the strict scrutiny standard. As the Secretary of State is the chairperson of the State Election Board and the State Election Board is charged with enforcing Georgia's election code under state law, we conclude that the

_____

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

2

Secretary of State is a proper party in this action for injunctive and declaratory relief pursuant to *Ex Parte Young*, 209 U.S. 123 (1908).

## I

## A

The facts in this matter are undisputed. Plaintiffs Lamar Grizzle and Kelvin Simmons are both Georgia residents who served on school boards in their respective communities at the time this action was filed. Grizzle is a member and currently Chairman of the Board of Education of Bartow County, Georgia, a position to which he was first elected in November 2002 and re-elected in 2006.[2] Grizzle's daughter is an assistant principal at Pine Log Elementary School, which is located within the Bartow County school district.

Simmons was a member of the Board of Education of the City of Gainsville, Georgia from 1991 through 2009. His wife is an assistant principal at Gainsville Middle School. Although he intended to run for re-election in November 2009, he was disqualified due to the passage of 2009 Georgia Laws 164 ("HB 251").

---

[2]In compliance with the District Court's preliminary injunction in this matter, Grizzle was permitted to qualify for the Republican primary during the fourth week of April 2010. He was re-elected in November 2010.

HB 251 was enacted by the State of Georgia and went into effect on May 5, 2009. HB 251 amended Georgia Code Ann. § 20-2-51 by adding the following as subsection (c)(2):

> No person who has an immediate family member sitting on a local board of education or serving as the local school superintendent or as a principal, assistant principal, or system administrative staff in the local school system shall be eligible to serve as a member of such local board of education. As used in this paragraph, the term "immediate family member" means a spouse, child, sibling, or parent or the spouse of a child, sibling, or parent. This paragraph shall apply only to local board of education members elected or appointed on or after July 1, 2009. Nothing in this Code section shall affect the employment of any person who is employed by a local school system on or before July 1, 2009, or who is employed by a local school system when an immediate family member becomes a local board of education member for that school system.

Ga. Code Ann. § 20-2-51(c)(2) (2009), *amended by* Act of May 25, 2010, 2010 Ga. Laws 468.[3]

**B**

On January 11, 2009, the Plaintiffs filed an action in the District Court for the Northern District of Georgia against the Honorable Brian Kemp, Secretary of

_____

[3]Plaintiffs in this litigation contest the version of Georgia Code Ann. § 20-2-51(c)(2) amended by HB 251 but prior to the amendments of May 25, 2010. For ease, this opinion refers to the statute at issue as "section 20-2-51(c)(2)."

State of Georgia, in his official capacity,[4] the Election Board of the State of Georgia,[5] and the County Executive Committee of the Bartow County Republican Party,[6] alleging, *inter alia*, that the "nepotism provision" of section 20-2-51(c)(2), as applied and on its face, violates the equal protection guarantee of the Fourteenth Amendment. They additionally alleged that that provision violates their right of free association, both as voters and as candidates for office, under the First Amendment. Plaintiffs requested, *inter alia*, that the court declare section 20-2-51(c)(2) unconstitutional; that it grant a preliminary injunction against enforcement of that section prior to the fourth week of April 2010, the deadline for candidate qualification for party primary elections; and that the Court also grant a permanent injunction against the section's enforcement.

---

[4]"There is created a state board to be known as the State Election Board, to be composed of the Secretary of State, an elector to be elected by a majority vote of the Senate of the General Assembly at its regular session held in each odd-numbered year, an elector to be elected by a majority vote of the House of Representatives of the General Assembly at its regular session held in each odd-numbered year, and a member of each political party to be nominated and appointed in the manner provided in this Code section. . . ." Ga. Code Ann. § 21-2-30(a). "The Secretary of State shall be the chairperson of the board. . . ." *Id.* at (b).

[5]"The State Election Board is vested with the power to issue orders . . . directing compliance with [Chapter 2 of the Georgia Code] or prohibiting the actual or threatened commission of any conduct constituting a violation [of that Chapter] . . . ." Ga. Code Ann. § 21-2-33.1(a).

[6]Under Georgia law, county executive committees of the respective political parties are charged with certifying to the Secretary of State those candidates who have qualified for the primary elections. Ga. Code Ann. § 21-2-154(a).

5

On January 30, 2010, Plaintiffs requested that the District Court enter an Order to Show Cause scheduling a hearing for a preliminary injunction. The Court denied their request on January 21, 2010. On the same day, the Plaintiffs filed a motion for a preliminary injunction and requested a hearing on their motion prior to the candidate qualifying period of April 26 to 30, 2010.

The Republican Party, on February 5, 2010, filed a motion to be excused from the case. It indicated that it would "abide by the statute as written or by any injunction entered by the Court." Mot. to be Excused at 2. The District Court granted the Republican Party's motion on February 12, 2010.

On February 12, 2010, the Secretary of State and the State Election Board jointly filed a motion to dismiss them from this action. In an order issued on March 15, 2010, the District Court granted the State Election Board's motion to be dismissed from this action, and denied the motion to dismiss the Secretary of State as a party.

The Secretary of State filed an answer to the complaint on March 29, 2010. On April 21, 2010, the District Court issued an Order granting in part and denying in part Plaintiffs' motion for a preliminary injunction. The District Court preliminarily enjoined the Secretary of State and the Republican Party "from enforcing or applying the portion of [Georgia Code Ann.] § 20-2-51(c)(2) that

6

precludes relatives of certain employees of a school system from running for election to the school board governing that system, and from precluding Plaintiff Grizzle or any other otherwise qualified individual from running for election to a school board position within Georgia." *Id*. at 60-61. It denied relief as to Plaintiffs' other claims, not pertinent to this appeal, and again rejected the Secretary of State's contention that he is not a proper party in this action.

The Secretary of State timely appealed from the District Court's April 21 order. This Court has jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1).

## II

The Secretary of State contends the District Court erred in holding that he is a proper party in this action, and, accordingly, in entering a preliminary injunction against him. He additionally argues that the District Court erred in applying strict scrutiny to the Plaintiffs' claims under the First and Fourteenth Amendments in its assessment of the Plaintiffs' Motion for Preliminary Injunction. Because the case-or-controversy requirement is jurisdictional in nature, we address that issue first.

## A

The Secretary of State asserts that, because he cannot qualify, challenge or certify candidates for local boards of education under Georgia's election code, he

is not a proper party in this lawsuit. He maintains that, under Georgia's election code, in partisan elections such as those for local boards of education,[7] a candidate's party is charged with determining the qualifications of aspirants for office. Ga. Code Ann. § 21-2-153.1(a).[8] Challenges to candidates to local office may be mounted only by electors or the elections superintendent. § 21-2-6(b).[9] The elections superintendent then certifies the election results to the Secretary of State as well as to the State School Superintendent. § 20-2-53.[10]

The Secretary of State contends that, "[b]ecause he must accept, and cannot alter, the qualifications and certification of Grizzle and Simmons [under Georgia's

[7]The court accepts the parties' concession that elections to local boards of education in Georgia are partisan. *See* Appellees' Br. 6 (stating that the Bartow County school board election is partisan); *see* Appellant's Br. 4 ("The facts of this case . . . are not in dispute.").

[8]"Unless otherwise provided by law, all candidates for party nomination in a municipal primary shall qualify as such candidates in accordance with the rules of their party." § 21-2-153.1(a).

[9]"The superintendent upon his or her own motion may challenge the qualifications of any [county or municipal] candidate [certified by the county or municipal executive committee, respectively, of a political party or who files a notice of candidacy] at any time prior to the election of such candidate. Within two weeks after the deadline for qualifying, any elector who is eligible to vote for any such candidate may challenge the qualifications of the candidate by filing a written complaint with the superintendent giving the reasons why the elector believes the candidate is not qualified to seek and hold the public office for which the candidate is offering. . . ." § 21-2-6(b).

[10]"[I]t shall be the duty of the elections superintendent of each system or other political subdivision to transmit to the Secretary of State and to the State School Superintendent a certified statement of the election of members of a local board of education. . . ." § 20-2-53.

8

election code], he cannot be sued over a statute designed to prevent such occurrence." Appellant's Br. 11.

Pursuant to the Eleventh Amendment, a state may not be sued in federal court unless it waives its sovereign immunity or its immunity is abrogated by an act of Congress under section 5 of the Fourteenth Amendment. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55-57 (1996); *Hans v. Louisiana*, 134 U.S. 1 (1890). Under the doctrine enunciated in *Ex Parte Young*, 209 U.S. 123, however, a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment. *Id.* at 168; *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004).

A state official is subject to suit in his official capacity when his office imbues him with the responsibility to enforce the law or laws at issue in the suit. *See Young*, 209 U.S. at 161. In *Ex Parte Young*, the Supreme Court held that, as the duties of the attorney general of Minnesota under both common law and statute included "the right and the power to enforce the statutes of the state, including . . . the act in question," the attorney general was a proper party. *Id.*

9

In this matter, the Secretary of State is, by statute, a member and the chairperson of the State Election Board. Ga. Code Ann. § 21-2-30(a) & (d). Under Georgia law, "[t]he State Election Board is vested with the power to issue orders . . . directing compliance with [Chapter 2 of Georgia's election code] or prohibiting the actual or threatened commission of any conduct constituting a violation [of Chapter 2] . . . ." § 21-2-33.1(a). Partisan primary elections, including those for local boards of education, fall within Chapter 2 of the state election code. *See* Ga. Stat. tit. 21, ch. 2 (governing "Elections and Primaries Generally").

Plaintiffs here seek prospective injunctive relief against the Secretary of State in his official capacity. Because their suit falls within the *Ex Parte Young* exception, the Eleventh Amendment does not bar their suit. Although the Secretary of State cannot directly qualify or challenge candidates for local boards of education or certify the results of those elections, as a member and the chairperson of the State Election Board, he has both the power and the duty to ensure that the entities charged with those responsibilities comply with Georgia's election code in carrying out those tasks. Pursuant to *Ex Parte Young*, "[h]is power by virtue of his office sufficiently connect[s] him with the duty of enforcement to make him a proper party to a suit of the nature of the one now

10

before" this Court. 209 U.S. at 161. The District Court therefore did not err in holding that the Secretary of State is a proper party in this action.

**B**

**1**

The Secretary of State also contends the District Court erred in determining that the strict scrutiny standard applies to the Plaintiffs' claims under the First and Fourteenth Amendments. He argues that, due to this error, the issuance of a preliminary injunction was improper.

"Although we review the district court's entry of a preliminary injunction under a deferential abuse-of-discretion standard, the legal conclusions upon which an injunction is based are subject to more exacting *de novo* review." *Bank of Am. Nat. Ass'n v. Colonial Bank*, 604 F.3d 1239, 1242-43 (11th Cir. 2010).

The moving party must demonstrate the following in order for the District Court to grant its motion for a preliminary injunction: "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211,

11

1217 (11th Cir. 2008). The Secretary of State maintains that, because the District Court applied the incorrect standard of review to Plaintiffs' constitutional claims, Plaintiffs have not demonstrated a likelihood of success on the merits. Our inquiry thus begins and ends with this first prong of the test.

**2**

In its analysis of the standard it should apply in determining whether section 20-2-51(c)(2) violates the Equal Protection Clause of the Fourteenth Amendment, the District Court stated that "the right to seek and hold public office is not a fundamental right protected by the Constitution." April 21 Order at 34 (internal citations omitted). Nonetheless, it found that section 20-2-51(c)(2)

> entirely precludes Plaintiffs from appearing on the ballot as candidates for their respective local school boards, and, consequently, its effect on Plaintiffs is extreme. Moreover, it is extremely likely that [Georgia Code Ann. § 20-2-51(c)(2)] will severely burden the rights of numerous Georgia voters, as it likely will bar individuals across the State from running as candidates for their local school boards, thereby depriving voters of the right to vote for the candidates of their choice.

*Id.* at 37-38. Holding that section 20-2-51(c)(2) thus severely impacted "ballot access" and "the right of association," the District Court applied strict scrutiny to Plaintiffs' claims. *Id.*

The District Court assumed, for purposes of its review, that the Secretary of State's proposed interest–the prevention of nepotism–is a compelling state interest. It stated that

> the statute . . . is not narrowly tailored to serve that purpose. Specifically, the statute is overly broad, because it simply excludes certain relatives from office, rather than addressing the real problem of nepotism–possible biased decisions of school board members. The statute, by the same token, is also too narrow, because it fails to address other family relationships that might cause biased decisions on the part of a school board member.

April 21 Order at 39. Additionally, the District Court noted,

> Georgia already has statutes in place that address many nepotism concerns, including: (1) [Georgia Code Ann.] § 20-2-58.1, which precludes school board members from voting on employment decisions for relatives; (2) [Georgia Code Ann.] § 45-10-3, which sets forth a code of ethics for school boards members and includes a provision that members must "[n]ever discriminate by the dispensing of special favors or privileges to anyone, whether or not for remuneration;" and (3) [Georgia Code Ann.] § 45-10-4, which permits the Governor to remove an official who breaches the provisions of [Georgia Code Ann.] § 45-10-3.

*Id.* at 39-40 (quoting Ga. Code Ann. § 45-10-3).

The District Court stated that, "[a]pplying strict scrutiny, [Georgia Code Ann.] § 20-2-51(c)(2) fails to pass muster." *Id.* at 38. It thus held that the Plaintiffs had shown a substantial likelihood of success on the merits at trial and

13

granted their motion for a preliminary injunction.

In support of the District Court's conclusion, Plaintiffs maintain that the nepotism provision violates their right to equal protection under the Fourteenth Amendment because it treats them differently from similarly situated persons, namely, individuals desiring to run for the school board who do not have family members employed in certain positions in the relevant school system. With regard to their claims under the First Amendment, Plaintiffs assert that the provision violates their right to free association because it affects their right to seek office as school board members as well as the right of voters to vote for them. They argue that the District Court did not err in applying strict scrutiny because section 20-2-51(c)(2) *completely* bars them from running for office, and thus constitutes a "severe restriction" on their right to be candidates as well as on voters' ballot access rights. They additionally note that the restriction is imposed based on matters over which they have no control.

The Secretary of State contends that "the district court erred in holding [Georgia Code Ann.] § 20-2-51(c)(2) unconstitutional [because] [t]here is no severe burden on Grizzle's and Simmons [sic] First and Fourteenth Amendment [r]ights." Appellant's Br. 24. He argues that this case is analogous to those in which courts have held that statutes requiring an individual to resign from office in

14

order to appear on the ballot for a different office ("resign-to-run" statutes) warrant only rational basis review.

**3**

The Supreme Court has not "attached such fundamental status to candidacy as to invoke a rigorous standard of review." *Bullock v. Carter*, 405 U.S. 134, 142-43 (1972). Recognizing, however, that the right to vote is fundamental, the Court has noted that "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Id.* at 143. But "[n]ot all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983); *see also Bullock*, 405 U.S. at 143 ("not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review."). A restriction on candidacy implicates a fundamental right only if "the challenged restriction unfairly or unnecessarily burdens the 'availability of political opportunity.'" *Anderson*, 460 U.S. at 793 (quoting *Clements v. Fashing*, 457 U.S. 957, 964 (1982) (plurality opinion)); *see also Morial v. Judiciary Comm'n of Louisiana*, 565 F.2d 295, 301 (11th Cir. 1977) (Candidacy is "an important, if not constitutionally

15

'fundamental,' right.").

In reviewing challenges to restrictions on candidacy and ballot access under the First and Fourteenth Amendments, we "must first consider 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the [candidate] seeks to vindicate.'" *Swanson v. Worley*, 490 F.3d 894, 902 (11th Cir. 2007) (quoting *Anderson*, 460 U.S. at 789). When the plaintiffs' rights are subject to "severe" restrictions, those restrictions survive only if they are "'narrowly tailored and advance[] a compelling state interest.'" *Id.* at 903 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)); *see Burdick v. Takushi*, 504 U.S. 428, 434 (1992) ("severe" regulation must be "'narrowly drawn to advance a state interest of compelling importance.'") (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). By contrast, "a State's important regulatory interests" are generally sufficient to justify a state election law which burdens the First and Fourteenth Amendment rights of candidates and voters with restrictions which are "reasonable" and "nondiscriminatory." *Swanson*, 490 F.3d at 903 (citing *Burdick*, 504 U.S. at 434). "Lesser burdens . . . trigger less exacting review . . . ." *Id.* Thus, in order to assess whether, on the current record, strict scrutiny applies to the Plaintiffs' claims under the First and Fourteenth Amendments, we must determine whether the restriction imposed by section

16

20-2-51(c)(2) is "severe" based on the "character and magnitude" of Plaintiffs' asserted harm.

In *Morial v. Judiciary Commission of Louisiana*, 565 F.2d 295 (5th Cir. 1977),[11] the former Fifth Circuit considered whether a Louisiana statute and canon of judicial conduct requiring judges to resign from their current office before running for a non-judicial position comported with the plaintiffs' rights to free speech and freedom of association under the First Amendment and their right to equal protection of the laws under the Fourteenth Amendment. *Id.* at 299-307. The Fifth Circuit stated that, although Judge Morial had a "substantial" First Amendment interest in becoming a candidate, "in order to judge the substantiality of the impairment," that interest must be weighed in light of his interests left unaffected by the Louisiana statute. *Id.* at 301. The Court noted that

> Louisiana's resign-to-run requirement does not burden [Judge Morial's] right to vote for the candidate of his choice or to make statements regarding his private opinions on public issues outside a campaign context; nor does it penalize his belief in any particular idea. These are core first amendment values.

*Id.*; *see also Clements*, 457 U.S. at 972 (no first amendment violation where state constitutional provisions "in no way restrict appellees' ability to participate in the

_____

[11]Decisions of the Fifth Circuit rendered prior to October 1, 1981 are binding precedent of this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

political campaigns of third parties. They limit neither political contributions nor expenditures. They do not preclude appellees from holding an office in a political party. . . . [A]ppellees may distribute campaign literature and may make speeches on behalf of a candidate.") The Fifth Circuit also stated that "[t]he impact of the resign-to-run requirement upon voters is even less substantial[,]" as it did not exclude candidates based on their viewpoint, or their membership in an identifiable group, such as the poor or minority parties. *Morial*, 565 F.2d at 301-02 (citations omitted).

In addressing the level of scrutiny appropriate to review the plaintiffs' challenge to the Louisiana statute under the First Amendment, the Court stated in *Morial*,

> The impairment of the plaintiffs' interests in free expression and political association stemming from enforcement of the resignation rule is thus not sufficiently grievous to require the strictest constitutional scrutiny. Neither is the impairment insubstantial or innocuous; a level of scrutiny which guarded against only those measures offending logic would be a gratuitous insult to the seriousness of the interests involved in becoming or supporting a candidate for public office. Instead, we should employ a level of scrutiny which requires the state to show a reasonable necessity for requiring judges to resign before becoming candidates for elective judicial office.

*Id.* at 302 (internal citations omitted).

18

The Supreme Court considered the equal protection question at length in *Clements v. Fashing*, 457 U.S. 957 (1982). The plaintiffs in *Clements* brought both First Amendment and Fourteenth Amendment challenges to Article III, § 19 and Article XVI, § 65 of the Texas Constitution. *Id.* Article III, § 19 stated that

> [n]o judge of any court, Secretary of State, Attorney General, clerk of any court of record, or any person holding a lucrative office under the United States, or this State, or any foreign government shall during the term for which he is elected or appointed, be eligible to the [state] Legislature.

*Id.* at 960. Article XVI, § 65 provided for the automatic resignation of certain state officers upon the announcement of their candidacy "in any General, Special or Primary Election, for any office of profit or trust under the laws of this State or the United States other than the office then held, at any time when the unexpired term of the office then held shall exceed one (1) year[.]" *Id.* The Court noted that it had "departed from traditional equal protection analysis" in cases involving classifications based on economic status and in those burdening emerging, smaller, or independent political parties or candidates. *Id.* at 964-65 (citations omitted).

The Supreme Court also stated in *Clements* that the concerns underlying those cases–filing fees, invidious discrimination, and discrimination based on viewpoint or political affiliation–did not apply to the matter before it. *Id.* at 964. Addressing Article III, § 19, it held that the classification was not invidious,

19

arbitrary, or irrational and that the burden imposed on a Justice of the Peace by that section–effectively, a maximum two-year waiting period between the end of his current term in office and announcing his candidacy for the state legislature–was *de minimis*. *Id.* at 967 (citing *Storer v. Brown*, 415 U.S. 724, 733-37 (1974) (no constitutional violation where individual was disqualified from running in party primary if he had been registered or affiliated with a different party within the preceding twelve months)). "[T]his sort of insignificant interference with access to the ballot need only rest on a rational predicate in order to survive a challenge under the Equal Protection Clause." *Id.* at 968.

The Supreme Court further stated in *Clements* that, pursuant to *Broadrick v. Oklahoma*, 413 U.S. 601, 607 (1973), the singling out of particular officeholders for this restriction did not offended equal protection. *Id.* at 969. "'[T]he legislature must have some leeway in determining which of its employment positions require restrictions on partisan political activities and which may be left unregulated.'" *Id.* (quoting *Broadrick*, 413 U.S. at 607 n.5.). The state may, consistent with equal protection, regulate "one step at a time, addressing itself to the phase of the problem which seems most acute." *Id.* at 970.

The Supreme Court likewise reviewed the classification behind Article XVI, § 65, the "resign-to-run" provision, for a "rational predicate." *Id.* Noting that there

20

was no apparent "invidious purpose" behind the provision, it held that the legislature's "one step at a time" approach was permissible under equal protection. *Id.* at 970-71.

Reviewing the plaintiffs' First Amendment claims, the Supreme Court held that they failed for the same reasons the plaintiffs' equal protection claims failed–because the burden on their interests in candidacy was *de minimis* rather than "severe." *Id.* It remarked that those claims additionally failed due to the limited nature of the challenged restrictions on political activity. *Id.*

The Second Circuit, too, has confronted the constitutionality of "resign-to-run" provisions, in *Fletcher v. Marino*, 882 F.2d 605 (2d Cir. 1989). In that case, plaintiffs, who were members of a community school board, argued that a New York statute making current community school board members ineligible for employment by any community school board or city board, and making certain public officials ineligible for membership on community school boards violated, *inter alia*, their right to freedom of association under the First Amendment. *Id.* at 608-10. The Second Circuit applied a lesser standard of scrutiny in its review of the plaintiffs' claims. *See id.* at 613. The law, it stated, "does no more than prohibit certain municipal employees, political party office holders and elected officials from being community school board members. It does not stop anyone

21

from running for any office." *Id.*

The Second Circuit in *Fletcher* also evaluated the plaintiffs' First Amendment claim as to infringement on the voters' right to choose a candidate under a lesser standard of review. *Id.* at 614. The New York legislature, it held, "has not prevented people with certain ideas from becoming candidates. It has not prevented people from certain protected backgrounds from becoming candidates. It has only prevented people holding certain jobs or certain party leadership positions from becoming members of community school boards." *Id.*

The Plaintiffs here attempt to distinguish this case from *Morial*, *Clements*, and *Fletcher* on two bases. We are not persuaded.

Plaintiffs first maintain that section 20-2-51(c)(2) "enacts a *total ban* from elective office for the thousands of close relatives of existing school board members, superintendents, principles [sic], assistant principals and 'system administrative staff.'" Appellees' Br. 21. Plaintiffs overstate the point. Section 20-2-51(c)(2) prohibits them, and like individuals, only from running for the school board governing the system in which certain family members are employed. Plaintiffs may run for any other elected office; they may vote, distribute campaign literature, voice their political opinions, and participate in and hold office in their political party of choice. Under the balancing test articulated by this Court in

22

*Swanson*, the Plaintiffs' injury under the First Amendment is not so "severe" as to require strict scrutiny.

Additionally, Plaintiffs suggest that the type of restriction at issue in this matter–nepotism–warrants closer scrutiny than that afforded in the "resign-to-run" cases. They argue that the plaintiffs in those cases were faced with a choice as to whether to step down from their current posts in order to run for office under the challenged law.  Here, Plaintiffs have no control over their eligibility as candidates for the desired school boards; their eligibility is entirely based on the employment of their "immediate family member[s]." *See* Ga. Code Ann. § 20-2-51(c)(2).

This Court had occasion to consider the standard of review applicable to anti-nepotism provisions specifically in *Parks v. City of Warner Robins*, 43 F.3d 609 (11th Cir. 1995).  There, the plaintiff argued that a Georgia statute which prohibited a city employee from working in the same department as a relative in a supervisory position violated her right of intimate association under the First Amendment, her substantive due process right to marry under the Fourteenth Amendment, and her right to equal protection under the Fourteenth Amendment due to its disparate impact on women. *Id.* at 612.  In determining whether the ordinance warranted strict scrutiny, this Court reviewed the effect of the restriction under each constitutional provision, rather than considering a specific standard

23

generally applicable to anti-nepotism provisions. *Id.* Because the provision at issue did not require a heightened standard of review, this Court analyzed the plaintiffs' claims under the rational basis standard. *Id.* at 614-15. That section 20-2-51(c)(2) combats nepotism therefore does not, in itself, subject it to strict scrutiny review.

In asserting that equal protection analysis of section 20-2-51(c)(2) demands strict scrutiny, the Plaintiffs charge both that it is too narrow and that it is overbroad. Plaintiffs argue that the statute's failure to address potential nepotism by grandparents, aunts, uncles, cousins, and the like demonstrates that "this statute was not drafted with 'nepotism' as the purpose[,]" "but rather was intended to cost someone elective office." Appellees' Br. 22-23. On this record, we cannot say that the statute was enacted with an invidious purpose; pursuant to *Clements*, the State may regulate one step at a time in order to address what it deems the most pressing issues. Plaintiffs' overbreadth argument similarly fails; that the statute does not prevent nepotism in all its possible forms does not heighten the severity of the restriction to necessitate strict scrutiny.

In addition, Plaintiffs argue that "the issue of nepotism can better be addressed by specific rules relating to decisions regarding relatives . . . ." Appellees' Br. 26. They note that Georgia already has statutes in place that

regulate school board members with respect to decisions affecting relatives employed by the school system, including ethics provisions that subject a board member to removal for breach. However, whether nepotism is "better" addressed in one manner or another is irrelevant to our inquiry here; the standard of review we apply in assessing the statute at hand is not measured by reference to alternative measures. *See, e.g.*, *Morial*, 565 F.2d at 301-03 (determining the appropriate level of scrutiny prior to analyzing whether the restriction at issue "[met] the test of reasonable necessity"). The Plaintiffs' argument in this regard thus goes to the question of whether Georgia Code Ann § 20-2-51(c)(2) is reasonably necessary to combat nepotism. Because we hold here that the District Court erred in applying strict scrutiny, we do not reach this issue.

**Conclusion**

"Candidacy for office is one of the ultimate forms of political expression in our society." *Morial*, 565 F.2d at 301. However, "[f]ar from recognizing candidacy as a 'fundamental right,'" the Supreme Court has stated "that the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" *Clements*, 457 U.S. at 963 (quoting *Bullock*, 405 U.S. at 143). Likewise, although "[v]oting is of the most fundamental significance under our constitutional structure[,] [i]t does not follow . . . that the right to vote in any

25

manner and the right to associate for political purposes through the ballot are absolute." *Burdick*, 504 U.S. at 433 (internal citations and quotations omitted). Only where candidacy or ballot access regulations severely burden the availability of political opportunity do we apply strict scrutiny.

On the current record, the District Court erred in reviewing Plaintiffs' constitutional claims under the strict scrutiny standard. Because the application of strict scrutiny on review of the Plaintiffs' constitutional claims was error, Plaintiffs have not demonstrated a likelihood of success on the merits, as required to obtain a preliminary injunction. We note that, although the Republican Party has been excused from appearing in this matter, our decision reversing the grant of a preliminary injunction applies to both the Secretary of State and the Republican Party. We express no view as to the merits of any other theory of liability Plaintiffs may wish to assert at any further proceedings before the District Court.

Pursuant to *Ex Parte Young*, 209 U.S. 123, the Secretary of State has the duty and the power to enforce the State's election code. The District Court did not err in holding that the Secretary of State is a proper party in this action.

**AFFIRMED** in part, and **REVERSED** in part.