**Jane DOE, Plaintiff,**

v.

**The UNIVERSITY OF ALABAMA IN HUNTSVILLE, Brent Wren, PhD., Sgt. John Beswick, and Regina Young Hyatt, PhD., Defendants.**

**Case No.: 5:14-cv-02029-HGD**

United States District Court, N.D. Alabama, Northeastern Division.

Signed March 31, 2016.

Mary-Ellen Bates, Bates Hetzel PC, Birmingham, AL, for Plaintiff.

John O. Cates, Robert W. Rieder, University of Alabama System, Huntsville, AL, for Defendants.

## MEMORANDUM OPINION AND PARTIAL DISMISSAL ORDER

MADELINE HUGHES HAIKALA, UNITED STATES DISTRICT JUDGE

This case involves a public university's investigation into a student's claims that another student sexually assaulted her in a university dorm. Plaintiff Jane Doe alleges that defendant University of Alabama in Huntsville discriminated against her because of her sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.[1] Ms. Doe also alleges that UAH, Associate Provost and NCAA Representative Brent Wren, UAH Police

Sergeant John Beswisk, and Dean of Students Regina Young Hyatt violated her rights to equal protection under the Fourteenth Amendment. Ms. Doe seeks relief from the individual defendants under § 1983.

This case is assigned to Magistrate Judge Harwell Davis. On August 31, 2015, Judge Davis entered a report and recommendation concerning the defendants' Rule 12(b)(6) motion to dismiss. (Doc. 17). In his report, Judge Davis recommended that the Court grant the defendants' motion and dismiss this action with prejudice. (Doc. 17, p. 27). Judge Davis explained to the parties that they had fourteen days in which to file objections to the recommendation. (Doc. 17, pp. 27-29). Ms. Doe filed objections to the recommendation. (Doc. 19).[2] The defendants did not object to Judge Davis's report. Because the parties have not consented to dispositive jurisdiction by a magistrate judge, the Clerk randomly selected the undersigned to review Judge Davis's report and Ms. Doe's objections.

## I. STANDARD OF REVIEW

When a party objects to a report and recommendation regarding a motion to dismiss, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. at § 636(b)(1)(B)-(C). The Court reviews de novo legal conclusions in

---

1. Ms. Doe improperly identified the University of Alabama in Huntsville as a defendant to this action. The Board of Trustees of the University of Alabama, for and on behalf of the University of Alabama in Huntsville, is the proper defendant. (Doc. 13, p. 1). The Court refers to the Board as UAH throughout this opinion.

2. Ms. Doe also filed a motion for leave to file an amended complaint. (Doc. 18). Because this case is assigned to Judge Davis and is before the undersigned only for a review of Judge Davis's report and Ms. Doe's objections, the Court does not rule on the pending motion. As explained in greater detail below, should Judge Davis grant Ms. Davis's motion for leave to file an amended complaint, supplemental factual allegations in the amended complaint provide additional support for Ms. Doe's Title IX claim. (See Doc. 18-1).

a report and reviews for clear error factual findings to which no objection is made. *Garvey v. Vaughn*, 993 F.2d 776, 779 n. 9 (11th Cir.1993); *see also LoConte v. Dugger*, 847 F.2d 745, 749 (11th Cir.1988); *Macort v. Prem, Inc.*, 208 Fed.Appx. 781, 784 (11th Cir.2006). A district court "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

When evaluating a motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir.2015).

## II. DISCUSSION

Ms. Doe lodges three specific objections to Judge Davis's report. First, Ms. Doe complains that the report omits certain alleged facts relevant to her Title IX claim. Second, Ms. Doe objects to Judge Davis's conclusion that she has failed to sufficiently allege that UAH acted with deliberate indifference to known sexual harassment. Third, Ms. Doe asks the Court to allow discovery before dismissing with prejudice her § 1983 claims.

### A. Ms. Doe's Title IX Claim

■ Ms. Doe's Title IX claim arises out of UAH's handling of her sexual assault complaint against UAH hockey player Lasse Uusivirta. Construing the facts that Ms. Doe alleged in her original complaint in the light most favorable to Ms. Doe, the Court finds that Ms. Doe has sufficiently alleged that UAH acted with deliberate indifference to known sexual harassment.

In her objections, Ms. Doe recites many of the alleged facts that give rise to an inference that UAH acted with deliberate indifference:

- UAH Police Sergeant John Beswisk "first attempted to talk Ms. Doe out of doing anything about the attack by mentioning that 'people who hang out at the hockey dorms share girls all the time' and that it 'was completely normal and okay to have sex with someone that [Doe] didn't know.'" (Doc. 19, p. 2, quoting Doc. 1, ¶ 18).

- After Mr. Uusivirta confessed, Sergeant Beswick told Ms. Doe that "she had 'no case at all.'" (Doc. 19, p. 2, quoting Doc. 1, ¶ 22).

- Upon Sergeant Beswick's recommendation, Ms. Doe "submitted her case to the student conduct board. The UAH investigation was then closed on January 14, 2013, with no arrest being made or further action taken." (Doc. 19, p. 3, citing Doc. 1, ¶ 23).

- The student conduct board "determined that [Mr. Uusivirta] should be immediately expelled;" however, Assistant Provost Dr. Brett Wren reviewed Mr. Uusivirta's appeal and imposed a significantly reduced penalty. (Doc. 19, p. 3, citing Doc. 1, ¶ 24).

- UAH did not inform Ms. Doe that Mr. Uusivirta appealed the decision, and she "saw her assailant on campus and had to inquire to get any information whatsoever. During the next month Ms. Doe was fearful to be on campus, seriously anxious and depressed, and missed several classes." (Doc. 19, p. 3, citing Doc. 1, ¶¶ 27-29).

- Dr. Wren did not make a decision regarding the appeal until March 21, 2013. "By the time Wren took action on Uusivirta's appeal the hockey season had ended (on March 2, 2013), the upcoming season's schedule had

been announced, and the semester was past the mid-point. Brent Wren is a public supporter of UAH hockey....The new sanctions against Uusivirta[:] 1) would not take place during that semester because it was past the mid-point; 2) [placed] his suspensions specifically between hockey seasons, while allowing him to return to campus and the training facility just in time to begin practice for the following season; and 3) made no mention of the withdrawal of his athletic scholarship, which the student board specifically addressed." (Doc. 17, pp. 3-4, citing Doc. 1, ¶¶ 30-32).

- When Ms. Doe approached Dr. Wren to discuss his decision, Dr. Wren "refused to speak [to her] without another woman present in the room....Then he refused to answer any of [Ms. Doe's questions], simply reiterating that UAH only expels students for academic misconduct." (Doc. 19, p. 5, quoting Doc. 1, ¶ 34).[3]

- After Dr. Wren issued his decision, Ms. Doe contacted outside law enforcement who arrested Mr. Uusivirta and charged him with first degree rape. A UAH hockey coach posted Mr. Uusivirta's bond. (Doc. 19, p. 5, citing Doc. 1, ¶ 38).

- The day after Mr. Uusivirta's arrest, even though Mr. Uusivirta already had admitted that Ms. Doe was unable to consent when he had sex with her, UAH's hockey coach posted on Twitter, " 'Things are not always as they seem. Be careful to judge.' " (Doc. 19, p. 6, quoting Doc. 1, ¶ 39).

- Mr. Uusivirta left the United States after he was released from jail. UAH kept his name "on the UAH hockey roster until as late as April 2013, one day before his attorneys informed the court that he had skipped bail." (Doc. 19, p. 6, citing Doc. 1 ¶¶ 42, 41).

Ms. Doe's original complaint contains factual allegations that plausibly suggest that UAH's " 'response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances' " and that UAH made Ms. Doe vulnerable to harassment. *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1295 (11th Cir.2007) (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

As noted above, *see supra* note 1, Judge Davis did not have the benefit of analyzing the defendants' motions against the additional allegations pleaded in Ms. Doe's proposed amended complaint. Although the Court finds that Ms. Doe's original complaint, standing alone, sufficiently pleads that UAH acted with deliberate indifference and states a Title IX claim, the Court briefly reviews allegations contained in the proposed amended complaint that further support her Title IX claim.

In her proposed amended complaint, Ms. Doe alleges that after the student conduct board recommended that UAH immediately expel Mr. Uusivirta, Ms. Doe

---

**3.** Ms. Doe argues in her objections that Dr. Wren's alleged statement to her is a "blatant misrepresentation of written University policy." (Doc. 19, p. 5). As support for this contention, Ms. Doe's relies on Section 6.21 of the UAH student handbook, which states that students charged with sexual misconduct may be punished by "the full range of sanctions outlined in the Student Code of Conduct in-cluding probation, suspension, and expulsion." (Doc. 19, p. 5, n. 2). Ms. Doe did not include this handbook language in either her original complaint or her proposed amended complaint. Were Ms. Doe to cite this portion of the student handbook in a pleading, these facts would provide support for her assertion that Dr. Wren misrepresented university policy.

"was informed that Dr. Hyatt, as Dean of Students had to verify the board's decision. This process took approximately one week, during which time the board met again and reached the same decision." (Doc. 18-1, ¶ 17). Section 7.5(k) of the UAH student handbook provides: "Sanction recommendations will be reviewed by the Provost/Executive Vice President for Academic Affairs prior to the dissemination of the Notice of Decision and Sanction. The Provost/Executive Vice President can return the decision to the Student Conduct Board or Hearing Officer for reconsideration." (Doc. 18-1, ¶ 18). Dr. Hyatt assumed the role of Provost/Executive Vice President for purposes of reviewing the student conduct board's decision. (Doc. 18-1, ¶ 18).

Without Ms. Doe's knowledge, Mr. Uusivirta appealed the student conduct board's decision to Dr. Wren, who served as UAH's NCAA representative. (Doc. 18-1, ¶ 20). Neither Dr. Hyatt nor the assistant dean of students informed Ms. Doe that the recommended expulsion was on hold. (Doc. 18-1, ¶ 21). On March 21, 2013, Dr. Wren vacated the expulsion and substituted lesser sanctions. (Doc. 18-1, ¶ 22).

These facts plausibly suggest that UAH may not have followed its own policy regarding Mr. Uusivirta's hearing. There was no process outlined in the student handbook by which a student could appeal to Dr. Wren after the Provost/Executive Vice President—or Dr. Hyatt as Dean of Students in this case—reviewed the student conduct board's recommendations regarding sanctions. Additionally, neither Dr. Hyatt nor Dr. Wren has the title of Provost/Executive Vice President for Academic Affairs. If one or both of these individuals reviewed the student conduct board's decision, and the Provost/Executive Vice President of Student Affairs did not review the decision, then UAH may have violated written university policy regarding review of recommended sanctions. If Ms. Doe receives an opportunity to amend her complaint, these allegations would shore up Ms. Doe's already adequately pleaded Title IX claim.

## B. Ms. Doe's § 1983 Claims

### 1. § 1983 Claims Against UAH

■ The Court adopts Judge Davis's recommendation that the Court dismiss with prejudice Ms. Does' § 1983 claims against UAH. The Eleventh Amendment to the Constitution of the United States provides that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. "Although the express language of the [Eleventh] [A]mendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens." *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir.1990) (citing *Hans v. Louisiana*, 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).

■ There are two exceptions to Eleventh Amendment immunity:

First, Congress can abrogate eleventh amendment immunity without the state's consent when it acts pursuant to the enforcement provisions of section 5 of the fourteenth amendment. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). Second, a state may waive its immunity expressly through legislative enactment. "[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman*, 465

U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).

*Carr,* 916 F.2d 1521, 1524–25 (11th Cir. 1990) (internal footnote omitted). Neither exception applies here. Congress has not abrogated Eleventh Amendment immunity in § 1983 cases. *Quern v. Jordan,* 440 U.S. 332, 338, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). And the State of Alabama has not waived its immunity. *See* Ala. Const. art. I, § 14 ("[T]the State of Alabama shall never be made a defendant in any court of law or equity."). The Court must dismiss the § 1983 claim against UAH as a matter of law. No amount of discovery will change this result.

Therefore, pursuant to Rule 12(b)(1), the Court will dismiss with prejudice Ms. Doe's § 1983 claims against UAH for lack of jurisdiction. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("[A] suit in which the State or one of its agencies or departments is named as defendant is proscribed by the Eleventh Amendment" regardless of the nature of the relief sought.); *Shuler v. Bd. of Trustees of Univ. of Ala.,* 480 Fed.Appx. 540, 544 (11th Cir. 2012) (finding no error in district court's decision to grant judgment in favor of UAB on plaintiff's § 1983 claims because the Board is entitled to Eleventh Amendment immunity); *Eubank v. Leslie,* 210 Fed.Appx. 837, 844 (11th Cir.2006) (holding that "The University of Alabama Board of Trustees is a state agency" and finding that "the district court did not err in dismissing [the plaintiff's] claim for injunctive relief on Eleventh Amendment immunity grounds").

### 2. § 1983 Official Capacity Claims Against Dr. Wren, Sergeant Beswick, and Dr. Hyatt

The Court accepts Judge Davis's recommendation that the Court dismiss Ms.

Doe's § 1983 official capacity claims for damages against Dr. Wren, Sergeant Beswick, and Dr. Hyatt because Eleventh Amendment immunity bars those claims. *See Jackson v. Ga. Dep't of Transp.,* 16 F.3d 1573, 1575 (11th Cir.1994) ("Under the Eleventh Amendment, state officials sued for damaged in their official capacity are immune from suit in federal court."). Again, this is a question of law; discovery will not change the analysis.

■ Ms. Doe's official capacity claims for injunctive relief are another matter. "Under the doctrine enunciated in *Ex parte Young,* . . . a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." *Grizzle v. Kemp,* 634 F.3d 1314, 1319 (11th Cir.2011). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 296, 298–299, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997)). "[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Id.* at 646, 122 S.Ct. 1753. Ms. Doe's § 1983 official capacity claim for injunctive relief satisfies the *Ex parte Young* exception to Eleventh Amendment immunity.[4] Ms. Doe alleges that Dr. Wren, Sergeant Beswick, and Dr.

---

4. Ms. Doe's original complaint does not specifically seek injunctive relief under the headings for her § 1983 claims. (*See* Doc. 1, pp. 11-14). However, the preamble to Ms. Doe's

Hyatt were policymakers for purposes of implementing UAH's policies and practices concerning sexual assault investigations. (Doc. 1, ¶ 61). Therefore, at the pleading stage, Ms. Doe has alleged facts suggesting that all three of these defendants have official capacity to secure the prospective relief that she seeks. Accordingly, the Court will not dismiss Ms. Doe's § 1983 official capacity claims for injunctive relief against Dr. Wren, Sergeant Beswick, and Dr. Hyatt.

**3. § 1983 Individual Capacity Claims Against Dr. Wren, Sergeant Beswick, and Dr. Hyatt**

Although Ms. Doe states in her objections that she sued Dr. Wren, Sergeant Beswick, and Dr. Hyatt in their individual capacities, neither the original complaint nor the proposed amended complaint specifically asserts a claim against these defendants in their individual capacities. If she intends to sue these defendants in their individual capacities, Ms. Doe must provide a specific allegation "to ensure [the defendants] receive sufficient notice with respect to the capacity in which he is being sued." *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1047 (11th Cir.2008).[5] On the face of the complaint, Ms. Doe has not stated a § 1983 claim against Dr. Wren, Dr. Hyatt, or Sergeant Beswick in his or her individual capacity.

Therefore, there is no § 1983 individual capacity claim for the Court to address.

**III. CONCLUSION**

For the reasons discussed above, the Court **DISMISSES WITH PREJUDICE** Ms. Doe's § 1983 claims against UAH. The original complaint contains no § 1983 individual capacity claim against Dr. Wren, Sergeant Beswick, and Dr. Hyatt.

Ms. Doe's Title IX claim against UAH and Ms. Doe's § 1983 official capacity claims for injunctive relief against Dr. Wren, Sergeant Beswick, and Dr. Hyatt will proceed. The Court returns these claims to Judge Davis for proceedings consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 31, 2016.

*REPORT AND RECOMMENDATION*

HARWELL G. DAVIS, III, UNITED STATES MAGISTRATE JUDGE

The above-entitled civil action is before the undersigned United States Magistrate Judge on the Motion to Dismiss filed by defendants. (Doc. 13). Plaintiff, Jane Doe, a student at the University of Alabama in Huntsville (UAH), filed this action on October 23, 2014. (Doc. 1, Complaint). She names as defendants The University of Alabama in Huntsville[1]; Brent Wren,

original complaint states that she seeks both injunctive relief and damages for both her Title IX and § 1983 claims. (Doc. 1, ¶ 1). Ms. Doe's proposed amended complaint clarifies her prayer for injunctive relief as follows: "Plaintiff requests that this Court enter an Order directing the defendants to promulgate more effective policies and procedures to ensure that other students are not victimized in a similar manner." (Doc. 18-1, pp. 12, 15).

5. In their motion to dismiss, the defendants stated "[t]he [c]omplaint does not plead § 1983 claims against the individual Defendants in their personal capacity. If however,

the Court should disagree and rule that the Complaint does adequately plead claims against individual Defendants, then the Defendants would ask the Court for permission to amend this Motion to Dismiss to address any personal capacity claims." (Doc. 13, ¶ 12). Because the parties have not briefed the issue of qualified immunity with respect to potential § 1983 individual capacity claims in this case, the Court will not address the merits of such a claim at this juncture.

1. Plaintiff has incorrectly designated UAH as a party to this action. The proper designation is The Board of Trustees of the University of

Ph.D.[2]; Sgt. John Beswick; and Regina Young Hyatt, Ph.D.[3] She alleges that she was the victim of a sexual assault by another UAH student.

In her complaint, plaintiff, "Jane Doe," alleges that in January 2013, she was a minor and a full-time student at UAH.[4] On the late evening of January 12, 2013, Doe was at student housing on the UAH campus, in the dorm room of an acquaintance, during which time she consumed a quantity of wine. Not wishing to leave campus after consuming alcohol, Doe states that she called a friend and asked if she could spend the night in her dorm room. After receiving permission to do so, Doe walked to building 706 in South East Campus Housing, where she fell asleep in the dorm room. Some time thereafter, she was awakened by her friend's flat mate, who inquired if she was alright and provided her with a blanket before leaving, after which Doe fell asleep again. (Doc. 1 at ¶¶ 10–12).

She further alleges that she was later awakened by a man whom she did not know, who informed her that she could not stay in that room and had to leave. The man, later identified as Lasse Uusivirta, repeatedly told Doe that she could not stay there and that it was unsafe. Disoriented, Doe left with him. Uusivirta led plaintiff to another location and to a back bedroom, where he indicated that she should lie down. According to plaintiff, Uusivirta subsequently got into bed with plaintiff and proceeded to kiss and grope her, prior to raping her. Plaintiff did not consent to

any sexual contact, nor was she capable of giving any such consent. (*Id.* at ¶¶ 13–14).

Plaintiff states that she was confused, shocked and under the influence of alcohol and that she asked Uusivirta several times who he was. At this point, he stopped, assisted her in getting dressed and returned her to the room in which he found her. (*Id.* at ¶ 15).

Some time thereafter, Doe was taken to the UAH police department where she was interviewed by defendant Sgt. John Beswick. During the interview, she identified a photograph of Uusivirta as her assailant. Plaintiff alleges that, during this interview, Beswick told her that "people who hang out at the hockey dorms share girls all the time," and that it "was completely normal and okay to have sex with someone that [the plaintiff didn't] know." (*Id.* at ¶¶ 17–18).

Beswick informed Doe that he knew that she believed she had been wronged, and would not call her allegations unfounded, but he made it clear to Doe that he did not believe her. Doe told Beswick that, if he did not intend to do anything about the rape, she would prefer that Uusivirta not know that she had spoken to him, as she feared retribution. She was then taken to Crisis Services of North Alabama, where a rape examination was performed and a kit was collected. (*Id.* at ¶¶ 19–20).

Plaintiff's complaint further states that the UAH police contacted Uusivirta, who admitted that he had engaged in sexual intercourse with plaintiff but that she "seemed to be drunk and didn't know what

---

Alabama, for and on behalf of The University of Alabama in Huntsville (hereinafter, "the Board" or "UAH").

**2.** Defendant Wren is the Associate Provost and NCAA Representative for UAH.

**3.** Defendant Dr. Regina Young Hyatt was the Dean of Students and Title IX Compliance Officer for UAH.

**4.** Obviously "Jane Doe" is not the plaintiff's true name. It is a pseudonym used to protect her identity and privacy. It is clear that her actual identity is known to the defendants.

was going on." He also admitted that he realized she was incapable of giving consent to sexual intercourse. (*Id.* at ¶ 21).

According to plaintiff, Beswick contacted her after this and informed her of Uusivirta's statement. He told her that she had "no case at all" in a court of law, informing her that she would "never win in court." He advised her to pursue the matter through the UAH conduct board, rather than through the criminal courts. Plaintiff agreed to pursue the matter through the UAH disciplinary system. (*Id.* at ¶ 22).

After conducting its investigation, the UAH Student Conduct Board determined that Uusivirta's athletic scholarship should be revoked and he should be immediately expelled from UAH. Plaintiff was informed of this decision and was under the impression that Uusivirta would vacate campus within a day or two of the hearing. No one advised her that he remained on the UAH campus. (*Id.* at ¶ 24).

However, Uusivirta appealed the decision of the Student Conduct Board, which called upon defendant Brent Wren to make a determination. (*Id.* at ¶ 25). Uusivirta was a scholarship hockey player for UAH. After being informed that Uusivirta had been expelled, plaintiff was shocked to see him on campus approximately two weeks later. As a result, she left campus and subsequently missed several classes. Plaintiff then learned that Uusivirta was appealing the Board's decision and that she would have to wait for Wren to make a decision before she would know if the expulsion would be carried out. (*Id.* at ¶¶ 26–28). Plaintiff states that during the intervening weeks, she suffered severe anxiety and distress and was fearful to be on campus. (*Id.* at ¶ 29).

On March 2, 2013, the UAH hockey team played its last game of the season. On March 7, 2013, Wren "tweeted" about the upcoming UAH hockey schedule stat-ing, "@uahhockey In the words of Opie Taylor, 'aint it a beauty pa?'" (*Id.* at ¶¶ 30–31). On March 21, 2013, plaintiff received an email informing her that Wren had vacated Uusivirta's expulsion and substituted new penalties. He was suspended from UAH for two academic semesters and eligible to re-apply for admission beginning in the fall of 2013. He would be allowed to complete the current semester but was banned from all university extracurricular activities and the use of university training facilities until August 15, 2013. He also was prohibited from having any contact with plaintiff for the duration of his time at UAH. (*Id.* at ¶ 32).

Plaintiff opines in her complaint that Dr. Wren intentionally waited until the hockey season was completed before making his decision and waited until the mid-point in the semester so that the punishment could be deferred. (*Id.* at ¶ 33). Plaintiff met with Wren after this decision was made but he refused to answer any questions, other than to inform her that UAH "only expelled students for academic misconduct." According to plaintiff, "[h]aving been failed utterly by the university, Doe contacted off campus law enforcement, who treated the matter with the appropriate gravity." (*Id.* at ¶¶ 33–36). A warrant was issued for Uusivirta's arrest for rape in the first degree and he was arrested. He was subsequently released on bond. However, he fled the United States to his native Finland before appearing in court on the matter. (*Id* at ¶¶ 38, 40).

Plaintiff states that Uusivirta's arrest was publicized and that there were several online comments made about her. Although she was not named, she alleges that this caused her to fear for her safety. (*Id.* at ¶ 44).

In Count I of her complaint, plaintiff alleges that UAH violated Title IX, 20

U.S.C. § 1681, *et seq.,* when it allowed her to be subjected to a hostile environment "created by UAH's lack of policies and procedures to properly investigate and/or address the sexual assault and subsequent harassment, and UAH's actual failure to properly investigate and/or address the sexual assault and subsequent harassment." (Doc. 1 at ¶ 48(d)). In Count II, plaintiff asserts that UAH deprived plaintiff of her right to equal protection of the laws in violation of 42 U.S.C. § 1983 by (a) failing to properly investigate the sexual assault, (b) failing to discipline the student involved in any way, (c) failing to adequately train defendants Wren, Beswick and Hyatt, and (d) demonstrating complete indifference to plaintiff and the ongoing trauma suffered by her caused by her rapist being on campus and by anonymous Internet threats. (Doc. 1 at ¶ 58(a)-(d)).

In Count III, plaintiff asserts that UAH has "*Monell* liability"[5] for its failure to train and supervise Wren, Beswick and Hyatt. Plaintiff alleges that each failed or refused to respond to reports of plaintiff's sexual assault, that Beswick actively attempted to dissuade plaintiff from seeking justice by telling her that she had no hope of winning her case, and that Wren, with Hyatt's complicity, delayed action on the discipline meted out until the alleged perpetrator of the assault completed his participation with the UAH hockey team. (Doc. 1 at ¶ 65). Plaintiff states that defendants Wren, Beswick and Hyatt each violated plaintiff's constitutional rights by (a) failing to take immediate and appropriate action to investigate the assault, (b) failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, (c) failing to provide an effective grievance procedure

for the students to file complaints of sexual discrimination, including sexual violence, and (d) failing to properly notify plaintiff of the outcome of the University disciplinary process, in that they fraudulently informed her that the accused student had been expelled from campus when he was, in fact, still a student and enrolled in at least one of her classes. (Doc. 1 at ¶ 69(a)-(d)).

In sum, plaintiff seeks injunctive relief and damages against UAH for the alleged violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* (Title IX), and against all defendants under 42 U.S.C. § 1983, for violation of the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

## DISCUSSION

Defendants have moved to dismiss plaintiff's complaint pursuant to Rules 8(a), 12(b)(1) and 12(b)(6), Fed.R.Civ.P. A defendant may move to dismiss a complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., if plaintiff has failed to state a claim for which relief may be granted. Fed.R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged by in the complaint as true. Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, the court makes reasonable in-

5. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

ferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.,* 416 F.3d 1242, 1248 (11th Cir.2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.; see also Iqbal,* 556 U.S. at 681, 129 S.Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal,* 556 U.S. at 679, 129 S.Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 561–62, 570, 127 S.Ct. 1955, 1968–69, 1974, 167 L.Ed.2d 929 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly,* the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. at 1964–65 (internal citations and emphasis omitted). For purposes of a 12(b)(6) motion to dismiss, allegations based "upon information and belief" do not have to be taken as true. *Mann v. Palmer,* 713 F.3d 1306, 1315 (11th Cir.2013) (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1965 (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible)).

More recently, in *Iqbal,* the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974.

### Count I

In Count I, plaintiff brings a claim pursuant to Title IX against the Board. Title IX states that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance" except for certain enumerated exceptions. 20 U.S.C. § 1681(a).

 In *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 633, 119 S.Ct. 1661, 1666, 143 L.Ed.2d 839 (1999), the Supreme Court held § 1681 creates a private cause of action for student-on-student sexual harassment. A Title IX funding recipient is liable for student-on-student harassment if it is "deliberately indifferent to sexual harassment, of which [it] has actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 650, 119 S.Ct. at 1675. The standard for student-on-stu-

dent sexual harassment claims is far more rigorous than a claim for teacher-on-student harassment. *See id.* at 650–53, 119 S.Ct. at 1675–76.

In *Williams v. Board of Regents of Univ. Sys. of Georgia,* 477 F.3d 1282, 1292–99 (11th Cir.2007), the Eleventh Circuit applied *Davis* and held a plaintiff seeking recovery for a Title IX violation predicated on student-on-student sexual harassment must prove five elements. First, the defendant must be a Title IX funding recipient. *Id.* at 1293. Second, an "appropriate person" must have actual knowledge of the alleged discrimination or harassment. *Id.* (quotation omitted). Third, the discrimination or harassment—of which the funding recipient had actual knowledge under element two—must be "severe, pervasive, and objectively offensive." *Id.* (quotation omitted). Fourth, the plaintiff must prove "the funding recipient act[ed] with deliberate indifference to known acts of harassment in its programs or activities." *Id.* (quotation omitted). Fifth, the plaintiff must demonstrate the discrimination or harassment "effectively barred the victim's access to an educational opportunity or benefit." *Id.* at 1298 (quotation and internal alterations omitted).

Plaintiff's complaint runs aground with regard to the fourth element under Title IX. Plaintiff's complaint fails to allege that the defendants were deliberately indifferent to the act of harassment. According to the Supreme Court, the Board can be liable for damages only where the Board itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge. *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290, 118 S.Ct. 1989, 1999, 141 L.Ed.2d 277 (1998). Furthermore, the United States Supreme Court has held

that "the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Davis,* 526 U.S. at 645, 119 S.Ct. at 1672 (internal quotations omitted). This "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." *Id.* at 648, 119 S.Ct. at 1673–74. Rather, the deliberate indifference standard requires "an official decision by the recipient [of federal funds] not to remedy the violation." *Gebser,* 524 U.S. at 290, 118 S.Ct. at 1999.

According to the complaint, once plaintiff complained about the assault to the UAH police, she was taken to a facility where a rape kit was obtained. Furthermore, an investigation was undertaken and the alleged perpetrator was questioned, resulting in an admission from him. Although they did not pursue criminal prosecution, the UAH police recommended that plaintiff pursue the matter through the University Student Conduct Board, which she did. Furthermore, it was initially recommended that the student be expelled. The student then exercised his right to appeal, resulting in lesser sanctions being imposed which included a suspension from school and an order to have no contact with the plaintiff for the remainder of his time at UAH. Especially in light of the no-contact order in its final decision, plaintiff cannot assert that the final action by UAH caused her to undergo harassment or made her vulnerable to it. She simply disagrees with their decision and believes it should have been more severe, with more immediate effects.

While plaintiff complains that the UAH police discouraged her from pursuing a criminal prosecution, that UAH did not tell her that Uusivirta had appealed his expulsion, and asserts that Dr. Wren's decision

may have been influenced by his support for UAH hockey, these actions, while perhaps negligent or incompetent, do not show deliberate indifference on the part of the defendants. There are no allegations in the complaint which reflect "an official decision by the recipient [of federal funds] not to remedy the violation." *Gebser*, 524 U.S. at 290, 118 S.Ct. at 1999. Plaintiff disagrees with the remedy imposed by UAH but has otherwise failed to allege any facts which reflect deliberate indifference on the part of UAH. Therefore, the motion to dismiss Count I is due to be granted pursuant to Fed.R.Civ.P. 12(b)(6).

### Count II

In Count II, plaintiff alleges all defendants violated 42 U.S.C. § 1983 by committing violations of her rights under the Fourteenth Amendment of the U.S. Constitution. In paragraph 1 of her complaint, plaintiff alleges that the defendants violated the Due Process Clause of the Fourteenth Amendment. However, in the body of Count II, she alleges that she was denied equal protection of the laws under the Fourteenth Amendment. (Doc. 1, Complaint, at ¶¶ 56, 58).

Count II asserts that the defendants subjected plaintiff to violations of her right to "personal security, bodily integrity and Equal Protection of the Laws" by failing to properly investigate Uusivirta's sexual assault on plaintiff, failing to discipline him "in any way, so he could continue to play hockey," failing to adequately train/supervise Wren, Beswick and Hyatt, and demonstrating complete indifference to the sexual assault on the plaintiff or the trauma caused by his continuous presence on campus or the anonymous threats. (*Id.* at ¶ 58).

She further alleges that UAH maintained unconstitutional customs, policies or procedures of failing to investigate evidence of criminal and tortious misconduct against students in the nature of violations of their right to personal security and bodily integrity and failed to adequately train/supervise UAH employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity and equal protection of the laws. (*Id.* at ¶ 59). She further alleges that these policies resulted in disparate treatment of female students and had a disparate impact on female students.

Title 42 U.S.C. § 1983 states, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has construed the Eleventh Amendment "to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S.

299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990) (citations and internal quotation marks omitted). The Eleventh Amendment bar to suit, however, is not absolute, because states may consent to suit in federal court, and Congress may abrogate states' sovereign immunity. *Id.*

 A state waives its Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Id.* at 305, 110 S.Ct. at 1873 (citations, internal quotation marks, and alterations omitted). A state does not waive its sovereign immunity only by consenting to suit in its own courts, "and thus, in order for a state statute ... to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in federal court." *Id.* at 306, 110 S.Ct. at 1873 (citations, internal quotation marks, and alteration omitted). Alabama has not consented to suit under § 1983. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) *(per curiam )* (citing Art. 1 § 14, Ala. Const.1901). Further, the Supreme Court has held that Congress did not intend for § 1983 to abrogate a state's Eleventh Amendment immunity. *Kentucky. v. Graham,* 473 U.S. 159, 169 n. 17, 105 S.Ct. 3099, 3107 n. 17, 87 L.Ed.2d 114 (1985).

In the context of Eleventh Amendment immunity, the Eleventh Circuit has held that state universities and the boards that govern them are "agencies or instrumentalities" of the state, and thus are immune from suit in federal court. *Harden v. Adams,* 760 F.2d 1158, 1163–64 (11th Cir. 1985) (holding that Eleventh Amendment bars suit against Troy State University because it is an agency and instrumentality of the state under Alabama law) (citing *Massler v. Troy State Univ.,* 343 So.2d 1

(Ala.1977)); *Ellison v. Abbott,* 337 So.2d 756 (Ala.1976)); *see Davis v. Alabama State Univ.,* 613 F.Supp. 134, 139–40 (M.D.Ala.1985) (holding that Eleventh Amendment bars suit against Alabama State University because it is identical to Troy State University in all relevant respects); *see also United States v. Alabama,* 791 F.2d 1450, 1456–57 (11th Cir. 1986) (holding that a state university is a creature of the state and has no standing under § 1983 or Title VII to seek an injunction against the state Board of Education). Therefore, plaintiff's claims against UAH and/or the Board of Trustees for the University of Alabama in Huntsville, under 42 U.S.C. § 1983, are barred by Eleventh Amendment immunity.

 In addition to her claims against UAH itself, the complaint also alleges wrongdoing by various officials of UAH committed while performing their duties as such officials. However, the Eleventh Amendment immunity also bars claims for money damages brought against officials and employees of state entities sued in their official capacities. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In *Will,* the Supreme Court held:

> [A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). As such, it is no different from a suit against the State itself. *See, e.g., Kentucky v. Graham,* 473 U.S. 159, 165–166; 105 S.Ct. 3099, 3104–3105, 87 L.Ed.2d 114 (1985); *Monell, supra,* at 690, n. 55, 98 S.Ct. at 2035, n. 55.

491 U.S. at 71, 109 S.Ct. at 2312. Therefore, to the extent that they are sued in their official capacities, the officials and employees alleged to have committed

wrongdoing against the plaintiff as set out in Count II are entitled to Eleventh Amendment immunity.

It does not appear that plaintiff has made a claim against the individual defendants in their individual capacities under Count II. However, to the extent the complaint is against the individual defendants in their individual capacity, plaintiff has failed to plead any facts which overcome their qualified immunity. Qualified immunity protects government officials performing discretionary functions from liability in their individual capacity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (quotation omitted). The immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007) (quotation omitted). Once a defendant establishes that he was acting within his discretionary authority, the plaintiff has the burden of establishing that qualified immunity is not appropriate. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

The complaint clearly alleges that the wrongdoing purportedly committed by the individual defendants occurred during the performance of their duties as officials of the University of Alabama at Huntsville. However, as set out below, to the extent that plaintiff may have intended to make a claim of individual liability, a plain reading of the complaint clearly reflects that these individual defendants are entitled to qualified immunity.

In order to determine whether a motion to dismiss is due to be granted on the basis of qualified immunity, a court must "determine whether the complaint alleges a clearly established constitutional viola-tion, accepting the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and limiting review to the four corners of the complaint." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir.2010). To avoid dismissal, the plaintiff's allegations must establish both (1) a constitutional violation and (2) that the violation was clearly established. *Id.* at 762. A constitutional right is clearly established when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (internal quotation marks omitted).

 Plaintiff has failed to set out any clearly established constitutional right violated by the defendants. The Supreme Court has held that nothing in the language of the Due Process Clause of the U.S. Constitution requires the State to protect the life, liberty and property of its citizens against invasion by private actors. "It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). There is no due process obligation that requires a State to ensure the plaintiff's security against harm from a third person. *Mitchell v. Duval County Sch. Bd.*, 107 F.3d 837, 838 (11th Cir.1997). Nor is there any right to require the state to investigate her claims at all, much less in the manner which she believes is appropriate, unless such failure to investigate is based on an unconstitutional motive or results in unconstitutional

treatment. *See Abella v. Simon*, 831 F.Supp.2d 1316 (S.D.Fla.2011); *Calogrides v. City of Mobile*, 475 So.2d 560 (Ala.1985). Although plaintiff does have a right under the Fourteenth Amendment to protection of her liberty interest in her bodily integrity, *Johnson v. Cannon*, 947 F.Supp. 1567 (M.D.Fla.1996), there are no allegations that any actions by UAH officials violated this right. The concept of a constitutional right to bodily integrity is the right to be free from "unauthorized and unlawful physical abuse" at the hands of the state *by a state official acting or claiming to act under the color of the law*, when the alleged conduct is of such a nature as to be "shocking to one's consci[ence]." *United States v. Lanier*, 520 U.S. 259, 262, 117 S.Ct. 1219, 1223, 137 L.Ed.2d 432 (1997). The assault on plaintiff was carried out by a private actor, not a state official or one acting under color of state law. By the time plaintiff made a report to UAH, the assault had already occurred and nothing is alleged in the complaint that reflects that UAH or any of the individual defendants was on notice, prior to the assault, that it might occur. Therefore, plaintiff has failed to plead *any* non-conclusory facts which establish a constitutional violation of her right to due process by UAH employees.

Likewise, she has failed to plead any facts which establish a constitutional violation of her right to equal protection. To survive a motion to dismiss an equal protection claim, a claimant must plausibly allege two elements: (1) that she is similarly situated with others who received more favorable treatment, and (2) that her discriminatory treatment was based on some constitutionally protected interest, such as race, religion, or national origin. *See Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir.2001); *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932–33 (11th Cir.1986). In this case, Doe asserts that her discriminatory treatment was based on her sex. However, nowhere in her complaint does she provide any information regarding anyone else, not in her protected class, who received more favorable treatment.

Furthermore, the allegations in the complaint reflect that Doe was not treated adversely. In her complaint, she alleges that, within two months of the time she brought her complaint to the attention of the UAH police, her claim was investigated, a hearing was held before the disciplinary board, and a sanction was imposed and then modified after an appeal by her alleged attacker. Although plaintiff is unhappy with the ultimate sanction imposed, the actions taken do not amount to a violation of her right to equal protection or due process.

Plaintiff alleges also that UAH maintained unconstitutional policies of failing to investigate evidence of criminal and tortious misconduct against students and of failing to adequately train and supervise UAH employees with regard to protecting students. She further alleges that these policies or practices resulted in disparate treatment and disparate impact on female students. (Doc. 1, Complaint, at ¶¶ 59–60). However, there is *no* factual information whatsoever in Doe's complaint about what disparate treatment occurred or why these actions have a disparate impact on female students at UAH; there is only plaintiff's conclusory statement that the disparate treatment/impact is present. In any event, any failure by the UAH police to investigate this claim and prosecute it more vigorously does not state a § 1983 claim. *Otero v. U.S. Att'y Gen.*, 832 F.2d 141, 141 (11th Cir.1987) ("a private citizen has no judicially cognizable interest in the prosecution or nonprosecution of another") (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35

L.Ed.2d 536 (1973)); *see also Capogrosso v. Sup.Ct. of N.J.,* 588 F.3d 180, 184 (3d Cir.2009) *(per curiam* ) ("[I]ndividual citizens do not have a constitutional right to the prosecution of alleged criminals."); *Sattler v. Johnson,* 857 F.2d 224, 227 (4th Cir.1988) (holding that there is no constitutional right for a member of the public, as a victim, to have defendants, including state government officials, criminally prosecuted).

In any event, plaintiff's "pattern and practice" and disparate treatment/impact allegations are clearly conclusory, and cannot survive a motion to dismiss. *See Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (while a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action"); *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (complaint cannot rest on " 'naked assertion[s]' devoid of 'further factual enhancement' ") (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955 (alteration in original)). Merely mouthing the buzzwords like "pattern and practice" (or, as in this case "policies and practices") in a complaint does not satisfy minimum pleading requirements because it represents a legal conclusion, and such conclusory labels are not credited for Rule 12(b)(6) purposes. *See, e.g., Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir.2012) ("if allegations are indeed more conclusory than factual, then the court does not have to assume their truth"); *Mamani v. Berzain,* 654 F.3d 1148, 1153 (11th Cir.2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth."). A conclusory statement of a pattern or practice is just the kind of legal conclusion that fails to pass muster under *Twombly/Iqbal* principles.

 If anything, the facts set out in plaintiff's complaint belie her conclusory assertions that UAH had a policy or practice of not investigating and not protecting students. Furthermore, vague and conclusory allegations in a complaint without specific factual support are insufficient to support a civil rights complaint because such complaints are held to a higher pleading standard, and unsupported conclusions of law do not meet that standard. *See GJR Invs., Inc. v. County of Escambia, Florida,* 132 F.3d 1359, 1367 (11th Cir. 1998); *Gonzalez v. Reno,* 325 F.3d 1228, 1235 (11th Cir.2003). A complaint must allege the relevant facts "with some specificity." *GJR Invs.,* 132 F.3d at 1367. "[M]ore than mere conclusory notice pleading is required. . . . [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir.1984). *See also Veney v. Hogan,* 70 F.3d 917, 922 (6th Cir. 1995) (holding that complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity"). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Marsh v. Butler County,* 268 F.3d 1014, 1036 n. 16 (11th Cir.2001). One must also keep in mind the fact that "[w]e generally accord . . . official conduct a presumption of legitimacy." *United States Dep't of State v. Ray,* 502 U.S. 164, 179, 112 S.Ct. 541, 550, 116 L.Ed.2d 526 (1991). Plaintiff's allegations of "practice or policies" are totally conclusory in nature and due to be dismissed.

Consequently, UAH and its officials acting in their official capacities are entitled to Eleventh Amendment immunity under Count II. Furthermore, plaintiff has failed to plead a § 1983 claim against any of the defendants in their individual capacities

and, in any event, under the facts stated in the complaint, they are clearly entitled to qualified immunity under Count II. Finally, plaintiff also simply has failed to state a claim for which relief can be granted under Count II and this claim is due to be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

*Count III*

Plaintiff labels Count III as one for "*Monell* Liability For Failure to Train and Supervise Regarding Reports of Sexual Assault [By] Defendant UAH—42 U.S.C. § 1983." However, the body of this claim is confusing and does not appear to allege anything different than that which she already has alleged in Count II. She essentially re-alleges her § 1983 claims, claiming that the Board of Trustees for UAH violated her right to equal protection "by failing to properly train and/or supervise its employees about the strictures of Title IX, and by promulgating and/or ratifying a custom, policy or procedure which encouraged the violation of plaintiff's rights in order to preserve the UAH hockey team." (Doc. 1, Complaint, at ¶ 71). She appears to be attempting to establish § 1983 liability for UAH under *Monell, supra*. However, official-capacity suits for retrospective relief—*i.e.*, money damages payable from the state treasury—generally implicate the Eleventh Amendment in the absence of a waiver by the state or a valid congressional override. *See Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (holding that Congress did not intend to abrogate state sovereign immunity in § 1983 claims). Consequently, Count III does not state a viable cause of action against the Board of Trustees for UAH.

Likewise, although the caption of Count III reflects that it is intended to allege a claim against UAH, various paragraphs in Count III accuse the individual defendants of wrongdoing. However, for the reasons set out above, to the extent they are sued in their official capacities, they are all entitled to Eleventh Amendment immunity. To the extent, if any, that they are being sued in their individual capacities, they are entitled to qualified immunity.

*State Law Claims*

In paragraph 1 of her complaint, plaintiff states that this is an action under Title IX, § 1983 and pendent state law claims. However, no state law claims are alleged within the body of the complaint. Therefore, the motion to dismiss as to any state law claims is moot.

## CONCLUSION

Based on the foregoing, it is RECOMMENDED that the Motion to Dismiss be GRANTED and this action be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. **Any objections to the failure of the magistrate judge to address any contention raised in the complaint also must be included.** Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B 1982) (*en banc*), *overruled by Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415 (5th Cir.1996) (*en banc*), *superseded by statute* Federal Magistrates Act, Pub.L. No. 111–16, 123 Stat. 1608 (codified as amended at 28 U.S.C. § 636(b)(1) (2009); *see Dupree v. Warden,* 715 F.3d 1295, 1300 (11th Cir. 2013). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objec-

tions which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.